Richard K. Walker, SBN 004159
Roger S. Owers, SBN 022965
**WALKER & PESKIND, PLLC**
16100 N. 71st Street, Suite 140
Scottsdale, Arizona 85254-2236
*rkw@azlawpartner.com*
*rso@azlawpartner.com*
Phone: (480) 483-6336
Facsimile: (480) 483-6337

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| R. BRIAN FIFER,<br><br>          Plaintiff,<br><br>     vs.<br><br>EASY ENERGY SYSTEMS, INC., a Minnesota corporation; MARK GAALSWYK, a resident of the State of Minnesota,<br><br>          Defendants. | **CASE NO.14-CV-00188- DGC**<br><br>**FIRST AMENDED COMPLAINT**<br><br><br>[Assigned to The Honorable David G. Campbell] |

Plaintiff, R. BRIAN FIFER, through his attorneys undersigned, as and for his claims for relief against Defendants, alleges as follows:

## THE PARTIES

1.      Plaintiff R. BRIAN FIFER ("FIFER"), is, and at all times pertinent was, a resident of Maricopa County, Arizona.

2.      On information and belief, Defendant EASY ENERGY SYSTEMS, INC. ("EES"), is a Minnesota corporation that, at all times pertinent, was duly registered with

1   the Arizona Corporation Commission, had its corporate headquarters and principal place of business in Arizona, and regularly conducted business in Arizona.  EES is in the business of developing small-scale, modular, biorefinery technology for the use of enzymatic processes to convert certain feedstocks to ethanol.

3.  On information and belief, Defendant MARK GAALSWYK ("GAALSWYK") is, and at all times pertinent was, a resident of the State of Minnesota, with a part-time residence in Scottsdale, Arizona, who on information and belief is, and at all times pertinent was, also a Director, Chairman of the Board of Directors, and the majority shareholder in EES.

**JURISDICTION AND VENUE**

4.  This Court has jurisdiction over the subject matter of this case pursuant to the Arizona Constitution and A.R.S. § 12-123.

5.  The Court has personal jurisdiction over Defendant EES pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure, and by virtue of the facts that it has availed itself of the privilege of conducting activities within the State of Arizona, thereby invoking the benefits and protections of the laws of this State.  In addition, EES purposefully directed activities within the State of Arizona and consummated transactions within the State and with certain of its residents, including Plaintiff FIFER.

6.  The Court has personal jurisdiction over Defendant GAALSWYK pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure, and by virtue of the facts that he has availed himself of the privilege of conducting activities within the State of Arizona, thereby invoking the benefits and protections of the laws of this State.  In addition,

WALKER & PESKIND, PLLC
Attorneys and Counselors
16100 North 71st Street, Suite 140
Scottsdale, AZ 85254
Telephone: (480) 483-6336

2

GAALSWYK purposefully directed activities within the State of Arizona and consummated transactions within the State and with certain of its residents, including Plaintiff FIFER.

7. Venue is proper in Maricopa County pursuant to A.R.S. § 12-401.

## GENERAL ALLEGATIONS

8. Beginning on or about June 13, 2011, Plaintiff FIFER was employed by Defendant EES in the capacity of its Executive Vice President, Finance and Chief Financial Officer.

9. EES, through GAALSWYK, agreed that Plaintiff FIFER's initial base salary would be $65,000 per year, with increases to come into effect upon EES's reaching certain equity funding milestones, or upon the occurrence of certain sales of EES's technology.

10. EES, through GAALSWYK, agreed to further compensation for Plaintiff FIFER that included, *inter alia*, approximately 2,000,000 shares of phantom EES stock.

11. Plaintiff FIFER was induced to take the position of Executive Vice President and CFO with EES, despite having other opportunities that would have been more lucrative in the near term, primarily on the strength of certain representations made by Defendant GAALSWYK.

12. The representations by GAALSWYK that figured materially in Plaintiff FIFER's decision to become employed by EES included statements that he was in a position to fund EES at the level of $150,000 per month "indefinitely." Such statements were made by GAALSWYK to, or in the presence of, Plaintiff FIFER on several

3

occasions, including but not limited to June 13, 2011, and numerous further occasions thereafter in the period June 2011 to September 2011.

13. Further representations made by GAALSWYK that materially influenced FIFER's decision to enter into an employment relationship with EES were statements that EES technology had been tested and confirmed to be able to convert profitably more than forty (40) different feedstocks, in addition to corn, into ethanol. Such statements were communicated by GAALSWYK to, or in the presence of, FIFER on several occasions, including but not limited to June 13, 2011, and numerous further occasions thereafter throughout the remainder of 2011.

14. Further representations made by GAALSWYK that materially influenced FIFER's decision to become an employee of EES included assertions that EES had agreements with over twenty (20) enzyme producers, pursuant to which EES had acquired the right to use the enzymes produced by such manufacturers to convert various feedstocks into ethanol. Such statements were communicated by GAALSWYK to, or in the presence of, FIFER on several occasions, including but not limited to June 13, 2011, and numerous further occasions throughout the remainder of 2011 and in the first five months of 2012.

15. On June 13, 2011, and on at least two further occasions between that date and June 30, 2011, GAALSWYK represented to, or in the presence of, Plaintiff FIFER that $20 million in funding had been secured to implement Defendant EES's Business Plan, and that half of that amount would be available by June 30, 2011, to support the Company's operations.

4

16. GAALSWYK further represented to Plaintiff FIFER on June 13, 2011, that, because of the financing sources that had been secured to support Defendant EES's operations, there would be a period of no more than ninety (90) days during which FIFER would be compensated at the reduced initial salary level specified in his Employment Agreement ($65,000), after which he would receive a base salary at the substantially increased rates specified in his Employment Agreement to take effect upon Defendant EES's receipt of specified amounts of equity funding.

17. GAALSWYK further represented to, or in the presence of, Plaintiff FIFER on June 13, 2011, and on numerous further occasions between that date and September 30, 2011, that there were more than one thousand (1,000) quotations outstanding for sales to interested customers, more than half of which would result in sales to be closed within a matter of a few months.

18. GAALSWYK further represented to, or in the presence of, Plaintiff FIFER on June 13, 2011, that GAALSWYK had invested over $5 million in capital in Defendant EES as of that date.

19. GAALSWYK further represented to, or in the presence of, Plaintiff FIFER on June 13, 2011, and on numerous further occasions during the three months thereafter, that a demonstration plant owned by Defendant EES and located in Emmitsburg, Iowa ("Emmitsburg Plant"), was operating in batch mode and that, with the further investment of $300,000, which GALLSWYK represented would be forthcoming within a few months from various governmental granting agencies and his own resources, the plant

5

would be able to operate in full production mode around the clock, producing $150,000 each month in operating profits to fund the operations of EES.

20. Each and every one of the representations set forth in Paragraphs 12-19 above was false, and were either known by GAALSWYK at the time to be false or made in reckless disregard of their truth or falsity.

21. All of the representations made by GAALSWYK as set forth in Paragraphs 12-19 above were made by him with the intention that Plaintiff FIFER, among others, would act in reliance on them, and Plaintiff FIFER did in fact reasonably rely on them to his detriment.

22. During Plaintiff FIFER's tenure with EES, payroll periods ended bi-weekly on Saturday, and paydays were set for the subsequent Friday.

23. Beginning in or about March of 2013, FIFER and others in the EES Senior Management Team (then including the Chief Executive Officer, the President, and the Vice President for Sales) began to question GAALSWYK about evidence of his misappropriation of EES monies, and the accuracy of representations he had made as to his ability to fund EES's operations, the feedstocks that had been tested and had proven capable of being profitably converted to ethanol, the number of agreements EES was purported to have with enzyme manufacturers, the amount of capital GAALSWYK had actually invested in Defendant EES, and the status and capacity of the Emmitsburg Plant.

24. In or about March of 2013, FIFER and others on the Senior Management Team expressly informed GAALSWYK that they thought he had been engaged in various forms of illegal activity, including embezzlement of EES funds and a scheme or

6

1  artifice to defraud members of the Senior Management Team, EES shareholders, and creditors.

2  25.    On or about May 21, 2013, FIFER, along with all other members of the Senior Management Team, received a letter from GAALSWYK announcing that he was placing all of them on "leave of absence." In conjunction therewith, GAALSWYK had, without prior notice, packed up the contents of the Scottsdale, Arizona offices of the members of the Senior Management Team, including all hard copy files and all computers with electronically stored information, and had arranged to have them shipped to Minnesota. The items thus removed from FIFER's office included personal items and documents.

26.    Within a few days of having received the aforementioned May 21, 2013, letter from GAALSWYK, FIFER and the other members of the Senior Management Team notified GAALSWYK that they considered their employment relationships to have been terminated. At no point did GAALSWYK or any other representative of EES contact FIFER or any of the other members of the Senior Management Team to inform them that, in fact, their employment had not been terminated.

27.    On June 12, 2013, FIFER and the other members of the Senior Management Team received letters from GAALSWYK informing them that, in his "capacity as a director on EES's Board," he was notifying them that they were being terminated without cause from their officer positions with EES.

WALKER & PESKIND, PLLC
Attorneys and Counselors
16100 North 71st Street, Suite 140
Scottsdale, AZ 85254
Telephone: (480) 483-6336

**FIRST CLAIM FOR RELIEF**
**(Arizona Wage Payment Statute, A.R.S. §§ 23-350, *et seq.*)**
**(Asserted Against Defendant EES Only)**

28. Plaintiff incorporates – as if fully restated herein – Paragraphs 1-27 above and, in particular, Paragraphs 8-9, 22 and 25-27 of this Complaint that are most directly relevant to this First Claim for Relief.

29. During the course of Plaintiff FIFER's employment with EES, he was not timely paid wages, as that term is defined in A.R.S. § 23-350(6), due him as required by A.R.S. §§23-351. Payroll records for EES are in the sole possession of Defendants, who are in a much better position than Plaintiff to identify the specific dates when this occurred, but Plaintiff believes and avers that it occurred on at least ten (10) separate occasions during the last 12 months of his employment with EES.

30. Plaintiff FIFER was also not timely paid wages, as that term is defined in A.R.S. § 23-350(6), due him upon the termination of his employment as required by A.R.S. § 23-353(A).

31. For each and every occasion when Plaintiff FIFER was not paid in timely fashion as hereinbefore alleged, he is entitled to recover, pursuant to A.R.S. § 23-355, an amount equal to treble the amount of the wages not paid as required by A.R.S. §§ 23-351 and 23-353(A), less the amount of any untimely payments made in the interim.

8

## SECOND CLAIM FOR RELIEF
### (Arizona Anti-Racketeering Statute, A.R.S. §§ 13-2301, *et seq.*)
### (Asserted Against Defendant GAALSWYK Only)

32. Plaintiff incorporates – as if fully restated herein – Paragraphs 1-31 above and, in particular, Paragraphs 11-21 and 23-24 of this Complaint that are most directly relevant to this Second Claim for Relief.

33. Defendant GAALSWYK enticed Plaintiff FIFER and the other members of the Senior Management Team to join EES, and to remain in EES's employ, with representations made by GAALSWYK that: (a) GAALSWYK was in a position to finance the Company's operations at the level of $150,000 per month "indefinitely;" (b) EES technology had been tested and confirmed to be able to convert profitably several different feedstocks, in addition to corn, into ethanol; (c) EES had agreements with over twenty (20) enzyme producers, pursuant to which EES had acquired the right to use the enzymes produced by such manufacturers to convert various feedstocks into ethanol; (d) $20 million in funding had been secured to implement Defendant EES's business plan, and $10 million of that amount would be available to fund the Company's operations by June 30, 2011; (e) because of the ready availability of funding, Plaintiff FIFER would need to wait no more than ninety (90) days from when he commenced his employment with EES to start receiving a base salary amount significantly greater than the $65,000 per year he was receiving to start; (f) there were more than 1,000 quotations out to interested customers, more than half of which would result in consummated sales within a few months; (g) GAALSWYK had invested over $5 million in capital in Defendant EES; and (h) improvements were to be made to the Emmitsburg Plant that, within a few

months, would enable it to operate in full production mode around the clock, producing $150,000 each month in revenues to fund the operations of EES. Each and every one of these representations was false, and known by GAALSWYK to be false at the time he made them or were made by him in reckless disregard of their truth or falsity, but FIFER and other members of the Senior Management Team to whom they were made were unaware of their falsity. These false representations constituted, and were made in furtherance of, a scheme or artifice to defraud for financial gain within the meaning of A.R.S. §§ 13-2301(D)(4)(b)(xx) and 13-2310(A).

34.     GAALSWYK on numerous occasions diverted, without lawful authorization, corporate funds of EES in amounts cumulatively in excess of $25,000, which he then converted and expended for purposes to benefit himself and/or Easy Automation, Inc. ("EAI"), another company in which GAALSWYK is, and was at all times pertinent, the sole or majority shareholder. In thus misappropriating EES corporate funds, GAALSWYK engaged in theft for financial gain within the meaning of A.R.S. §§ 13-1802(A)(1), (2), and (3), and 13-2301(D)(4)(b)(v).

35.     GAALSWYK also diverted, without lawful authorization, in excess of $300,000 in investor monies that had been specifically earmarked by EES's Senior Management Team for the payment of federal and State payroll and withholding taxes, causing those taxes to go unpaid during the entire tenure of Plaintiff FIFER's employment with EES. This misappropriation of EES corporate funds also constituted theft for financial gain within the meaning of A.R.S. §§ 13-802(A)(1), (2), and (3), and 13-2301(D)(4)(b)(v). GAALSWYK also diverted, without lawful authorization,

WALKER & PESKIND, PLLC
Attorneys and Counselors
16100 North 71st Street, Suite 140
Scottsdale, AZ 85254
Telephone: (480) 483-6336

approximately $300,000 in loan proceeds that had been earmarked for the purchase of specifically identified equipment for improvement of the Emmitsburg Plant, falsely representing to the lender that the aforementioned equipment had been purchased.  This misappropriation of EES corporate funds also constituted theft for financial gain within the meaning of A.R.S. §§ 13-802(A)(1), (2), and (3), and 13-2301(D)(4)(b)(v).  In addition GAALSWYK's false representation to the lender that the loan proceeds had been used to purchase equipment that was not, in fact, purchased constituted a further false representation made in furtherance of a scheme or artifice to defraud for financial gain within the meaning of A.R.S. §§ 13-2301(D)(4)(b)(xx) and 13-2310(A).

36.    GAALSWYK also diverted, without lawful authorization, approximately $150,000 in monies that were the subject of a grant from Iowa Power Fund specifically for the purchase of storage tanks for the Emmitsburg Plant that were, in fact, never purchased.  Upon information and belief GAALSWYK has falsely represented to the Iowa Power Fund on one or more occasions that the storage tanks had been purchased.  This misappropriation of EES grant monies from the Iowa Power Fund also constituted theft for financial gain within the meaning of A.R.S. §§ 13-802(A)(1), (2), and (3), and 13-2301(D)(4)(b)(v).  In addition GAALSWYK's false representations to the Iowa Power Fund that the grant monies had been used to purchase storage tanks would constitute a further false representation made in furtherance of a scheme or artifice to defraud for financial gain within the meaning of A.R.S. §§ 13-2301(D)(4)(b)(xx) and 13-2310(A).

11

37. GAALSWYK's conduct in participating in and perpetuating a scheme or artifice to defraud, and in committing the theft of EES corporate funds, as hereinbefore alleged, constituted "racketeering," within the meaning of A.R.S. §§ 13-2301(D)(4).

38. GAALSWYK's actions in participating and perpetuating a scheme or artifice to defraud, and in committing the theft of EES corporate funds, as hereinbefore alleged, were numerous and continuous in nature, and they continued over a period of more than two (2) years beginning in or about early 2011, thus constituting a pattern of unlawful activity within the meaning of A.R.S. § 23-1314.04(S) and (T)(3).

39. EES constitutes an "enterprise," within the meaning of A.R.S. § 13-2301(D)(2).

40. Through the pattern of unlawful activity hereinbefore alleged, GAALSWYK acquired and maintained illegal control of EES, within the meaning of A.R.S. § 2312(A).

41. Through the pattern of unlawful activity hereinbefore alleged, GAALSWYK conducted the affairs of EES through racketeering, within the meaning of A.R.S. § 2312(B).

42. Plaintiff FIFER suffered injury to his business, person, and property as a direct and proximate result of the pattern of unlawful activity engaged in by GAALSWYK as hereinbefore alleged, in the form of lost income, losses in the value of the phantom stock issued to him by EES, and lost opportunities for gainful employment and business ventures in an amount to be proven at trial, but currently estimated to be not less than $1,000,000.

WALKER & PESKIND, PLLC
Attorneys and Counselors
16100 North 71st Street, Suite 140
Scottsdale, AZ 85254
Telephone: (480) 483-6336

43. Plaintiff FIFER suffered injury to his business, person, and property as a direct and proximate result of GAALSWYK's controlling and conducting the affairs of EES through racketeering as hereinbefore alleged, in the form of lost income, losses in the value of the phantom stock issued to him by EES, and lost opportunities for gainful employment and business ventures in an amount to be proven at trial, but currently estimated to be not less than $1,000,000.

44. Plaintiff FIFER is entitled, pursuant to A.R.S. § 13-2314.04(A) and (D)(4) and (5), to recover treble the amount of his direct and consequential damages, plus his costs and attorney's fees in prosecuting this claim.

45. In compliance with the requirements of A.R.S. § 13-2314.04(H), Plaintiff FIFER has, contemporaneous with the filing of this Amended Complaint, caused notice to be provided to the Attorney General of the State of Arizona of this claim, along with a copy of the Amended Complaint.

**THIRD CLAIM FOR RELIEF**
**(Declaratory Judgment/Rescission)**
**(Asserted Against Defendant EES Only)**

46. Plaintiff incorporates – as if fully restated herein – Paragraphs 1-45 above and, in particular, Paragraphs 11-21 of this Complaint that are most directly relevant to this Third Claim for Relief.

47. Defendant GAALSWYK enticed FIFER and the other members of the Senior Management Team to sign Employment Agreements with EES with knowingly false and fraudulent representations made by GAALSWYK that: (a) GAALSWYK was in a position to finance the Company's operations at the level of $150,000 per month

13

"indefinitely;" (b) EES technology had been tested and confirmed to be able to convert profitably several different feedstocks, in addition to corn, into ethanol; (c) EES had agreements with over twenty (20) enzyme producers, pursuant to which EES had acquired the right to use the enzymes produced by such manufacturers to convert various feedstocks into ethanol; (d) $20 million in funding had been secured to implement Defendant EES's business plan, and $10 million of that amount would be available to fund the Company's operations by June 30, 2011; (e) because of the ready availability of funding, Plaintiff FIFER would need to wait no more than ninety (90) days from when he commenced his employment with EES to start receiving a base salary amount significantly greater than the $65,000 per year he was receiving to start; (f) there were more than 1,000 quotations out to interested customers, more than half of which would result in consummated sales within a few months; (g) GAALSWYK had invested over $5 million in capital in Defendant EES; and (h) improvements were to be made to the Emmitsburg Plant that, within a few months, would enable it to operate in full production mode around the clock, producing $150,000 each month in operating profits to fund the operations of EES. Each and every one of these representations was false, and known by GAALSWYK to be false at the time he made them or made in reckless disregard for their truth or falsity, but Plaintiff FIFER and other members of the Senior Management Team to whom such false representations were made were unaware of their falsity.

48.   Plaintiff FIFER reasonably relied to his detriment upon the false and fraudulent representations used by GAALSWYK to induce FIFER and other members of the Senior Management Team to sign Employment Agreements.

49. In light of the false and fraudulent representations employed by GAALSWYK to entice Plaintiff FIFER to sign an Employment Agreement with EES, FIFER is entitled to a declaration from this Court that said Employment Agreement was void *ab initio*, it has no binding effect on FIFER, and its terms cannot be enforced against him.

50. Alternatively, as a result of the false and fraudulent representations used by GAALSWYK to induce Plaintiff FIFER to sign an Employment Agreement with EES, FIFER is entitled to a declaration from this Court that he had the right to rescind said Employment Agreement, and that he has effectively done so.

**FOURTH CLAIM FOR RELIEF**
**(Arizona Employment Protection Act, A.R.S. § 23-1501)**
**(Asserted Against Defendant EES Only)**

51. Plaintiff incorporates – as if fully restated herein – Paragraphs 1-50 above and, in particular, Paragraphs 23-27 of this Complaint that are most directly relevant to this Fourth Claim for Relief.

52. Defendants terminated Plaintiff FIFER's employment with EES in retaliation for his having disclosed, along with other members of the Senior Management Team, a reasonable belief that GAALSWYK was involved in the theft of EES's corporate funds and a scheme or artifice to defraud the members of the Senior Management Team and the Company's investors and creditors, both of which constitute violations of Arizona criminal statutes.

53. The disclosure by Plaintiff FIFER and others of their belief that GAALSWYK and, through him, EES were involved in illegal activities, was made to

15

GAALSWYK, who was Chairman of the Board of Directors of EES and had the authority to investigate and take further action to bring about the cessation of such illegal conduct, or to assign responsibility for the investigation and any further appropriate action to a committee of the Board of Directors.

54. The termination of Plaintiff FIFER's employment with EES in retaliation for his having raised concerns about GAALSWYK's illegal conduct violated A.R.S. §23-1501(3)(c)(ii).

55. As a result of the retaliatory and unlawful termination of Plaintiff FIFER's employment with EES, he has suffered damages in an amount to be determined at trial.

56. In unlawfully terminating Plaintiff FIFER's employment in retaliation for his activities in raising concerns about illegal conduct as hereinbefore alleged, Defendant EES acted maliciously and with an evil hand guided by an evil mind.  Accordingly, Plaintiff FIFER is entitled to an award of punitive damages in an amount sufficient to punish Defendant EES for its unlawful conduct and to deter similar conduct by others in the future.

WHEREFORE, Plaintiff FIFER respectfully demands judgment against Defendants, and each of them, as follows:

A. Finding that Plaintiff FIFER was not paid wages due him in timely fashion as required by A.R.S. §§ 23-351 and 23-353(A), and awarding him treble the amounts not timely paid, less any amounts paid prior to the entry of judgment;

B. Finding that Defendant GAALSWYK engaged in a pattern of unlawful activity, and that he controlled and conducted the affairs of Defendant EES through

racketeering, and awarding Plaintiff FIFER treble the amount of his resulting direct and consequential damages, plus his attorney's fees and costs of litigating his claim under the Arizona Anti-Racketeering Statute, pursuant to A.R.S. §13-2314.04 (A) and (D)(4);

C. Declaring that Plaintiff FIFER was fraudulently induced to enter into and execute an Employment Agreement with Defendant EES by fraudulent misrepresentations made by Defendant GAALSWYK and that, as a result, said Employment Agreement was void *ab initio* and of no binding legal effect vis-à-vis Plaintiff FIFER, and/or that Plaintiff FIFER had the legal right to rescind said Employment Agreement and has effectively done so;

D. Finding that the termination of Plaintiff Fifer's employment with EES was in retaliation for his having engaged in the protected activity of raising concerns about illegal conduct by Defendants, awarding Plaintiff his direct and consequential damages resulting from his unlawful termination, and awarding punitive damages in an amount sufficient to punish Defendants for their unlawful conduct and deter others from engaging in such conduct in the future;

E. Awarding Plaintiff FIFER all taxable costs incurred by him in this action;

F. Awarding Plaintiff FIFER his attorney's fees and costs pursuant to A.R.S. § 13-2314.04 (A) and A.R.S. § 12-341.01(A);

G. Ordering Defendant GAALSWYK to divest himself of any interest, direct or indirect, in EES pursuant to A.R.S. § 13-2314.04(D)(1);

H. Ordering Defendant GAALSWYK to hold all property, along with proceeds and fruits therefrom, property acquired by him in violation of A.R.S. § 13-

2301(D)(4)(b)(v), (xx) and/or A.R.S. § 13-2312, along with all proceeds and fruits therefrom, in a constructive trust for the benefit of Plaintiff FIFER and others entitled to remedies under A.R.S. § 13-2314.04;

I. Awarding Plaintiff FIFER prejudgment interest on all damages awarded to him in this action, save only on such exemplary damages as are awarded pursuant to A.R.S. § 13-2314.04(A) and (D)(4); and

J. Providing for such other and further relief as the Court deems just and proper in the circumstances.

DATED this 21st day of February, 2014.

WALKER & PESKIND, PLLC

By: /s/ Richard K. Walker
Richard K. Walker
16100 N. 71st Street, Suite 140
Scottsdale, Arizona 85254-2236

*Attorney for Plaintiff*

NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2014, I electronically filed the foregoing with the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all parties of record.

/s/ Michelle Giordano

18